# UNITED STATES CIRCUIT COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

## APPEAL NUMBER 22-11569-E
_____

## JUDITH WILLIS,

### Plaintiff / Appellant,

### v.

## ROYAL CARIBBEAN CRUISES LTD.

### Defendant / Appellee.
_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## DISTRICT COURT CASE NO. 20-CV-21192-KMM
_____

## APPELLANT'S INITIAL BRIEF
_____

L. Alex Perez, Esq.
LIPCON, MARGULIES
& WINKLEMAN, P.A.
One Biscayne Tower, Suite 1776
2 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6304

**APPELLANT'S CERTIFICATE OF INTERESTED
PERSONS AND CORPORATE DISCLOSURE STATEMENT**

In compliance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned counsel of record for Appellant certifies that the following listed persons, parties, and corporations have an interest in the outcome of this appeal.

Parties:

Judith Willis, *Plaintiff-Appellant*

Royal Caribbean Cruises Ltd. d/b/a Royal Caribbean Group, *Defendant-Appellee*

Attorneys:

L. Alex Perez, Esq., *Counsel for Plaintiff-Appellant*

Lipcon, Margulies & Winkleman, P.A., *Law Firm for Plaintiff-Appellant*

Andrew Craven, *Counsel for Defendant-Appellee*

The Chartwell Law Offices, *Law Firm for Defendant-Appellee*

Trial Judges:

District Judge K. Michael Moore

Magistrate Judge Lauren Louis

Corporate Disclosure Statement:

Plaintiff/Appellant is a natural person and has not initiated this action under a corporate capacity. As such, Plaintiff/Appellant has no responsive corporate information to disclose.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because it will assist the Court to efficiently decide the issues on appeal.

## TABLE OF CONTENTS

**PAGE NO.**

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT ................................................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ......................................... iii

TABLE OF CONTENTS ................................................................................... iv

TABLE OF CITATIONS .................................................................................... vi

STATEMENT OF JURISDICTION .................................................................. 1

STATEMENT OF THE ISSUE .......................................................................... 2

STATEMENT OF THE CASE ........................................................................... 3

STANDARD OF REVIEW ............................................................................... 12

SUMMARY OF ARGUMENT ......................................................................... 13

ARGUMENT ................................................................................................... 16

   I.   The District Court erred in excluding evidence of three prior substantially similar incidents that Willis proffered to support Royal Caribbean's notice of the dangerous conditions Willis alleged to have caused her injuries .............. 16

   II.   The District Court erred in holding that Royal Caribbean satisfied its initial summary judgment burden on the issue of medical causation before shifting the summary judgment burden to Willis ........................................................ 30

   III.   The District Court erred in holding that Willis did not present sufficient evidence on the issue of general injury causation and damages ..................... 42

   IV.   The District Court erred in holding that Willis did not present sufficient evidence in support of her vicarious liability claim to survive summary judgment ........................................................................................................ 45

## <u>**TABLE OF CONTENTS**</u>

**PAGE NO.**

CONCLUSION ......................................................................................... 51

CERTIFICATE OF COMPLIANCE .......................................................... 54

CERTIFICATE OF SERVICE ................................................................... 54

## **TABLE OF CITATIONS**

**PAGE NO.**

## **CASES**

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970) ................................................................... 30, 38

*Amy v. Carnival Corp*.,
   961 F.3d 1303 (11th Cir. 2020) ........................................ 17, 24, 29

*Anderson v. Liberty Lobby, Inc*.,
   477 U.S. 242 (1986) ................................................................... 37, 41

*Anderson v. Radisson Hotel Corp*,
   834 F.Supp. 1364 (S.D. Ga. 1993) ........................................ 30, 39

*Angrand v. Key*,
   657 So. 2d 1146 (Fla. 1995) ............................................................. 44

*Braddock v. Seaboard A. L. R. Co.*,
   80 So. 2d 662 (Fla. 1955) ................................................................. 44

*Button v. Royal Caribbean Cruises, Ltd*.,
   2013 WL 12064491 (S.D. Fla. 2013) .............................................. 44

*Castro v. United States*,
   2021 WL 2269811 (S.D. Fla. 2021), *report and recommendation adopted,*
   2021 WL 2176870 (S.D. Fla. 2021) ................................................ 31

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................... 38-39

*Chapman v. AI Transp.*,
   229 F.3d 1012 (11th Cir. 2000) ....................................................... 12

*Clark v. Coats & Clark, Inc.*,
   929 F.2d 604 (11th Cir. 1991) ............................... 30, 32-33, 38-40

**PAGE NO.**

*Cogburn v. Carnival Corp.*,
    2022 WL 1215196 (11th Cir. 2022) ................................ 17, 19-20, 24, 29

*Guevara v. NCL (Bahamas) Ltd*.,
    920 F.3d 710 (11th Cir. 2019) ................................ 16, 22, 24

*Huddleston v. United States*,
    2019 WL 6879741 (S.D. Fla. 2019) ................................ 35-36, 42

*Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., Inc*.,
    669 F.2d 1026 (5th Cir. 1982) ................................ 32

*Jones v. Otis Elevator Co*.,
    861 F.2d 655 (11th Cir. 1988) ................................ 16, 36, 41

*Kulakowski v. Royal Caribbean Cruises, Ltd.,*
    2016 WL 10951816 (S.D. Fla. 2016) ................................ 20

*Mann v. Carnival Corp.*,
    385 F.3d 1278 (S.D. Fla. 2019) ................................ 40

*MidAmerica C2L Inc. v. Siemens Energy Inc.,*
    25 F.4th 1312 (11th Cir. 2022) ................................ 12, 21

*Mills v. Redwing Carriers, Inc.*,
    127 So. 2d 453 (Fla. 2d DCA 1961) ................................ 44

*Ree v. Royal Caribbean*,
    315 F.R.D. 682 (S.D. Fla. 2016) ................................ 20

*Rice-Lamar v. City of Ft. Lauderdale, Fla*.,
    232 F.3d 836 (11th Cir. 2000) ................................ 33

*Rivera v. Royal Caribbean Cruises Ltd.,*
    711 F.App'x 952 (11th Cir. 2017) ................................ 41

*Sorrels v. NCL (Bahamas) Ltd*.,
    796 F.3d 1275 (11th Cir. 2015) ................................ 17, 24, 26, 28-29

**PAGE NO.**

*Taiariol v. MSC Crociere S.A.*,
    677 F. App'x 599 (11th Cir. 2017) .......................................................... 23

*Taylor v. Royal Caribbean Cruises Ltd.*,
    437 F. Supp. 3d 1255 (S.D. Fla. 2020) ............................................... 17, 29

*Yusko v. NCL (Bahamas) Ltd.*,
    4 F.4th 1164 (11th Cir. 2021) ...................................................... 46, 49, 50

**STATUTES**

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1292 ...................................................................................... 1

28 U.S.C. § 1332 ...................................................................................... 1

28 U.S.C. § 1333 ...................................................................................... 1

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over this case, which was supported by two independent bases. First, diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Appellant, Judith Willis ("Willis") is a citizen of New Jersey and Appellee, Royal Caribbean Cruises Ltd. ("Royal Caribbean") is a Liberian-incorporated entity with its principal place of business in Florida. *Compare* Am. Complaint, ECF No. 19, ¶¶1-3 *with* Answer, ECF No. 24, ¶¶1-3. Second, admiralty jurisdiction pursuant to 28 U.S.C. § 1333 because Willis became injured as a result of an alleged tort on a cruise ship while traveling on navigable waters. Am. Complaint, ECF No. 19, ¶¶7-13.

This Honorable Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 1292(a)(3). This appeal arises from a final order of a federal district court that determined the rights and liabilities of parties to an admiralty case in connection with the District Court entering summary judgment and final judgment against Willis. *See* Order, ECF No. 53; Final Judgment, ECF No. 54.

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether the District Court erred in excluding evidence of three prior substantially similar incidents that Willis proffered to support Royal Caribbean's notice of the dangerous conditions Willis alleged to have caused her injuries?

2.    Whether the District Court erred in holding that Royal Caribbean satisfied its initial summary judgment burden on the issue of medical causation before shifting the summary judgment burden to Willis?

3.    Whether the District Court erred in holding that Willis did not present sufficient evidence on the issue of general injury causation and damages?

4.    Whether the District Court erred in holding that Willis did not present sufficient evidence in support of her vicarious liability claim to survive summary judgment?

## STATEMENT OF THE CASE

### I.    Overview

This case arises from injuries sustained by a cruise ship passenger, Judith Willis ("Willis"). On May 4, 2019, Willis was rushed by a Royal Caribbean crewmember during a crowded muster drill in a confined area of a cruise ship, the *Anthem of the Seas*. Defendant/Appellee, Royal Caribbean Cruises operated that cruise ship.  As a result of her fall, Willis sustained severe neck injuries (C4-5 and C5-6 disc herniations) which necessitated spinal fusion surgery.

More specifically, Willis's incident occurred when a Royal Caribbean crewmember pressured Willis to move quickly in a very crowded and confined area during Royal Caribbean's mandatory muster drill, without reasonable consideration of Willis's <u>expressed</u> functional limitations. Although Willis <u>expressly told</u> the crewmember that Willis's age, weight, and functional limitations prevented her from moving among the crowd into a very confined space, over several levels of steps, in a rushed manner; the crewmember nevertheless ordered Willis, who is overweight, to move quickly into a six-inch-wide space.

When Willis couldn't fit into the space, the crewmember then ordered her to climb into an area that Willis couldn't physically access.  When Willis again adamantly told the crewmember that Willis couldn't climb into the area, the crewmember then ordered Willis to quickly go down another step, with a non-

continuous handrail between steps, causing Willis to fall in the Royal Theatre aboard the vessel and severely injure her neck.

As a result of this incident, Willis asserted three claims against Royal Caribbean: i) general negligence; ii) failure to warn; and iii) vicarious liability premised on the offending crewmember's conduct. Am. Complaint, ECF No. 19.

Royal Caribbean moved for summary judgment on all of Willis's claims. MSJ, ECF No. 44. Royal Caribbean argued, *inter alia*, that Willis did not define a dangerous condition; Royal Caribbean did not have notice of any dangerous condition; and Royal Caribbean's conduct did not cause Willis's alleged injuries. *Id.* Royal Caribbean also moved *in limine*, MIL, ECF No. 42, to exclude prior incident evidence Willis uncovered in discovery, MTC Order, ECF No. 38, which Willis intended to use to prove Royal Caribbean's notice of the dangerous conditions Willis alleged to have caused her injuries. The three prior incidents Willis submitted in support of her direct negligence claims all involved passenger falls caused by crowded conditions in confined areas of the ship caused by, and required of, Royal Caribbean's muster drills.  Two of the incidents occurred while the confined crowd was leaving the muster drill; and one incident occurred while the crowd was going into the confined space of the muster drill – and was reportedly caused by the passenger feeling rushed and falling as a result, just like Willis.

- 4 -

In an Omnibus Order, the District Court ruled in Royal Caribbean's favor on its motion *in limine* and excluded Willis's prior incident evidence on grounds that the prior incidents were not similar enough to Willis's alleged incident. Order, ECF No. 53, pgs. 17-21. In short, the District Court found that the first two incidents were not similar because they occurred while the confined crowd was leaving the muster drill; and the third incident could not be deemed similar because the passenger did not specify who, specifically, was rushing him. *Id.* The District Court then entered summary judgment in Royal Caribbean's favor, and entered final judgment against Willis. Order, ECF No. 53; Final Judgment, ECF No. 54.

The District Court based its summary judgment Order on two erroneous holdings – both of which Willis challenges in this appeal: first, that Royal Caribbean did not have notice of the dangerous conditions Willis alleged to have caused her injuries; and second, that Willis did not meet her summary judgment burden on the issue of medical causation in connection with her claimed neck herniations. *Id.*

Willis timely appealed. NOA, ECF No. 55.

## II.    Detailed Statement of Case with Record Support

On May 4, 2019, Royal Caribbean operated the *Anthem of the Seas.* Answer, ECF No. 24, ¶7. At that same time, Willis was a lawful passenger aboard the *Anthem of the Seas*, Answer, ECF No. 24, ¶9.

On May 4, 2019, Willis injured her neck aboard the *Anthem of the Seas* in connection with the dangerous manner in which Royal Caribbean and its crewmembers unreasonably rushed a crowd of passengers into confined spaces over multiple deck levels and stairs to participate in Royal Caribbean's muster drill; and doing so without reasonable consideration of passengers' expressed functional limitations. *See* Am. Complaint, ECF No. 19, ¶12.

On the day of the incident, Royal Caribbean controlled Valeriya Artyushenko, a crewmember working aboard the *Anthem of the Seas*. ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 52, lns. 11- pg. 54, ln 16.[1] Artyushenko, did not give Willis reasonable accommodations with respect to Royal Caribbean's muster drill, despite Willis *expressly* telling Artyushenko of Willis's functional limitations and inability to fully participate in Royal Caribbean's muster drill as quickly as the

---

[1] *See also* ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 11, ln. 22 – pg. 14, ln. 20 (explaining that "operate" includes being "responsible for" the vessels; "essentially they run the vessel"; "Royal Caribbean is the one that employs [the crewmembers] and trains [the crewmembers]"; "Royal Caribbean would provide [crewmembers] the guidance and the polices as to what the muster drill will entail and what employees during the muster drill are supposed to be doing").

crewmember ordered. ECF No. 43-1, Willis's Depo., pg. 69, ln. 12 – pg. 70, ln. 13

("I said, I can't fit in there. She said – I'm fat, you know. I can't. So she said go in

there. I said I can't go in there. I can't climb. I'm old. I'm fat. So she says, oh, come

on, follow me. So I held on again, and I stepped down and I went down. . . . She was

rushing me); ECF No. 43-1, Willis's Depo., pg. 79, ln. 1-19 (Q. Okay. And what do

you believe caused you to fall? A. Her rushing me"); ECF No. 43-2, Jaques's Depo.,

pg. 79, lns 10-18 (Artyushenko, "should have considered Willis's limitations and

provided her accommodations with respect to its muster drill.").

At the time of Willis's May 4, 2019 incident, it was Royal Caribbean's policy

to give passengers reasonable accommodations in connection with Royal

Caribbean's mandatory muster drill. ECF No. 46-1, Royal Caribbean's Corp. Rep.

Depo., pg. 14, ln. 25 – pg. 15, ln. 20 ("Yes. The muster drill is meant to be conducted

in a way that – at least by the Royal Caribbean crew members – that won't cause

injury, yes."); ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 19, ln. 10 –

pg. 20, ln. 17 ("Really, I mean, if anybody needs help Royal Caribbean will assist

them with it, yes . . . If there's somebody who needs assistance getting there, Royal

Caribbean -- and says to a crew member, I need some help, then a crew member will

assist them"; "It's not a written policy. But if a guest is going to walk up to a crew

member and say, I need help, a crew member is not going to turn them away and say no. They're going to assist them, of course").[2]

In her Amended Complaint, Willis alleged that Royal Caribbean's muster drill presented the following dangerous conditions to which Willis was exposed and which caused her incident and resulting injuries: (1) mandating that all passengers participate in Royal Caribbean's mandatory muster drill, without reasonable considerations for passengers who are physically unfit to participate; (2) rushing passengers through the muster drill exercise, without reasonable consideration for their physical condition and/or physical abilities; (3) requiring a dangerous amount of passengers aboard the vessel to participate in Royal Caribbean 's mandatory muster drill all at the same time. Am. Complaint, ECF No. 19, ¶12. The evidence Willis presented demonstrated that Willis was required by Royal Caribbean's crewmember to navigate several steps while being rushed among the crowd; with a non-continuous handrail; while being ordered to fit in impossible spaces and perform physical maneuvers that she *expressly* told the crewmember she could not. ECF No. 43-1, Willis's Depo., pg. 69, lns 12-24; pg. 79, lns 1-19.

---

[2] *See also* ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 24, ln. 7 – pg. 25, ln. 23 ("I mean, look, if there's a passenger that's freaking out or having a serious anxiety attack because they can't go to the muster drill **no crew member is going to say to them, you need to go in there.** They're going to calm them down and try to assist them…").

In support of the dangerous conditions Willis alleged in her Amended Complaint and deposition, Willis submitted her own sworn deposition testimony and that of Royal Caribbean's corporate representative (outlined above); and the sworn testimony of her cruise ship safety expert, Randal Jaques ("Jaques"), a former Chief Safety Officer and Chief Security Officer for many of the world's largest cruise lines.

For example, on the rushing point, Jaques testified that "You don't inherently place somebody in jeopardy by telling them where to go, in an unsafe manner to proceed **when they've already told you … she says she doesn't walk well**. So what are you sending her downstairs for? It doesn't make sense". ECF No. 43-2, Jaques' Depo., pg. 83, lns. 14-20. Jaques also testified that Artyushenko's conduct was "totally out of form. It's not within policy. It's not within training of STCW95, crowd and crisis control management…." ECF No. 43-2, R. Jaques' Depo., pg. 82, lns. 2-7; pg. 79, lns 10-18.

And on the reasonable accommodations point, Jaques testified that Artyushenko "should have considered Willis's limitations and provided her accommodations with respect to its muster drill." ECF No. 43-2, Jaques' Depo., pg. 82, lns. 2-7; pg. 79, lns 10-18. In summary on these two points, Jaques testified:

> And it was my understanding that Mrs. Willis spontaneously saying, Hey, I'm this or I'm that, or I can't do this, **is a understandable, red flag of a crew member that's trained to be in a muster drill position, <u>that everything stops right there</u>. <u>There's no more movement.</u>**

**There's no more going downstairs. There's no more going anywhere. That I come to you now, or I get somebody else to come to you that's a team member, and we provide you assistance, but you don't go down into the theatre**. And I don't -- even if I was to take you into the theatre, what we would do and what I would do, **is that we would help you to the nearest chair to the upper top row as you enter the theatre to sit you down, and we would physically help you sit down**.

ECF No. 43-2, Jaques's Depo., pg. 30, ln. 1 – pg. 31, ln. 10. *See also* ECF No. 41-1, Jaques' expert report in support of the dangerous conditions Willis alleged in the Amended Complaint; ECF No. 43-2, Jaques's Depo., pg. 72, lns. 4-15 (R. Jaques authenticating his expert report and confirming that all of his opinions therein are made within a reasonable degree of professional certainty).

At the time of Willis's May 4, 2019 incident, Royal Caribbean also operated, and had operated in the past, the other thirty-six (36) cruise vessels within the Royal Caribbean fleet of vessels. *See* ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 11, ln. 22 – pg. 14, ln. 20 (confirming that Royal Caribbean "operates" approximately 36 vessels within the Royal Caribbean fleet; "operate" includes being "responsible for" the vessels; "essentially they run the vessel").

At the time of Willis's May 4, 2019 incident, Royal Caribbean was on notice of dangerous conditions Willis alleged to have cause her injuries. ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 67, ln. 20 – pg. 70, ln 9 (discussing prior similar incidents). Specifically, in the three years before Willis's incident, other passengers aboard Royal Caribbean's vessels participating in Royal Caribbean's

muster drill also became injured in substantially similar ways to which Willis became injured. *See* Passenger Injury Statements, i) ECF No. 46-5, James Bennetts – October 20, 2018 – *Independence of the Seas*; ii) ECF No. 46-6, Mary Daniels – March 6, 2017 – *Grandeur of the Seas*; iii) ECF No. 46-7, Barnes Boyle – July 30, 2018 – *Enchantment of the Seas.* ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 67, ln. 20 – pg. 70, ln 9 (testifying to these facts and authenticating this prior incident evidence).

In support of the causal link between the muster drill incident and her claimed neck injuries, Willis presented to the District Court the following evidence: i) her deposition testimony, ECF No. 43-1, Willis's Depo., pg. 41, ln. 15 – pg. 42, ln. 21 ("Well, I hurt my neck"); ii) Willis's June 3, 2019 post-incident cervical MRI, ECF No. 46-9; and iii) a medical report from Dr. Kozel, a doctor who had examined and treated Willis 7 years *before* the subject incident, and *after*, who had examined her post-incident MRI, and who gave an opinion that in the 7 years before the Royal Caribbean fall incident, Willis had <u>never</u> complained of neck pain, and for the first time in his 7 year history treating her, only complained of neck pain after the May 4, 2019 cruise ship incident, Dr. Kozel Report, ECF No. 46-8.

At the summary judgment stage, Royal Caribbean <u>did not</u> provide the District Court with <u>*any*</u> of the following evidence which could have negated Willis's medical causation argument: i) a medical report from Royal Caribbean's *own* medical expert

opining that the subject incident did not cause Willis's alleged neck herniations; ii) deposition testimony from Royal Caribbean's *own* medical expert on this point; iii) deposition testimony from *any* of Willis's disclosed medical providers agreeing that the subject incident did not cause Willis's alleged neck herniations.

## STANDARD OF REVIEW

This Court reviews "*de novo* a district court's grant of summary judgment, applying the same legal standards as the district court." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

This Court reviews a district court's grant of a motion *in limine* for abuse of discretion. *MidAmerica C2L Inc. v. Siemens Energy Inc.,* 25 F.4th 1312, 1325–26 (11th Cir. 2022) (noting that under the abuse-of-discretion standard, the Court may reverse a decision of the district court if the district court applied an incorrect legal standard, followed improper procedures in making its determination, or made findings of fact that are clearly erroneous).

## SUMMARY OF THE ARGUMENT

This Honorable Court should reverse the District Court's Order and remand this case for the following reasons:

First, the District Court erred in excluding evidence of three prior substantially similar incidents Willis proffered to support Royal Caribbean's notice of the dangerous conditions she alleged to have caused her injuries. The three prior incidents involved Royal Caribbean's guests who sustained injuries from falling while navigating the crowded conditions in confined spaces caused by Royal Caribbean's mandatory muster drill; all within the three-year period before Willis's alleged incident. All three prior incidents were substantially similar to Willis's alleged incident and were therefore legally sufficient to support Royal Caribbean's notice of the dangerous conditions Willis alleged to have caused her injuries.

For example, it was documented in a post-injury statement that one passenger was injured on a step while "concentrating on where the steward was telling us to go", and when Royal Caribbean asked him to identify what could have been done to avoid his incident, he reported to Royal Caribbean: "no rushing." Similarly, Willis was injured on a step when Royal Caribbean's crewmember rushed her to follow the crewmember during Royal Caribbean's mandatory muster drill.

Second, the District Court erred in holding that Royal Caribbean satisfied its initial summary judgment burden on the issue of medical causation before shifting

- 13 -

the summary judgment burden to Willis. In the District Court proceedings, Royal Caribbean did not present *any* evidence to negate Willis's medical causation element, such that the summary judgment burden never shifted to Willis. And, even if Willis did have a burden at the summary judgment stage, which she disputes, she satisfied that burden by proffering the medical report and anticipated trial testimony of Dr. Kozel – Willis's treating doctor of 7 years before the incident and after, and a properly disclosed medical expert. Dr. Kozel's expert testimony at trial would be sufficient to satisfy Willis's burden of proof on the medical causation element.

Third, the District Court erred in holding that Willis did not present sufficient evidence on the issue of general injury causation and damages. In other words, even if Willis did not present sufficient medical causation evidence for her neck herniation injuries, which she disputes, her sworn testimony that she fell and suffered neck pain following the Royal Caribbean muster incident should be sufficient alone to support general causation and damage elements of her claims at trial.

Lastly, the District Court erred in holding that Willis did not present sufficient evidence in support of her vicarious liability claim to survive summary judgment. In fact, Willis proffered strong record evidence and deposition testimony from several witnesses in support of her vicarious liability claim against Royal Caribbean premised on the conduct of Artyushenko. Given the viability of that vicarious liability claim, pursuant to controlling precedent, Willis did ***not*** need to present any

evidence on the issue of Royal Caribbean's notice. Consequently, even if the District Court properly excluded Willis's prior incident evidence, which she disputes, Willis's vicarious liability claim still should have survived summary judgment.

In the end, all of Willis's claims should have survived summary judgment, and her claims should have been ultimately decided by a jury. This Honorable Court should reverse the District Court's Order and remand this case for a jury trial.

## ARGUMENT

**I.    The District Court erred in excluding evidence of three prior substantially similar incidents that Willis proffered to support Royal Caribbean's notice of the dangerous conditions Willis alleged to have caused her injuries.**

Willis alleged that the manner in which Royal Caribbean conducted its mandatory muster drill was unsafe because, *inter alia,* a Royal Caribbean rushed her to her muster drill station; and did not reasonably accommodate her given her expressed physical limitations.

To establish Royal Caribbean's notice of the dangerous conditions Willis alleged to have caused her injuries, Willis proffered three prior incidents, all within three years of Willis's incident, in which Royal Caribbean cruise passengers became injured in connection with Royal Caribbean's mandatory muster drill and while aboard cruise ships that were operated by Royal Caribbean. Under Eleventh Circuit law, a plaintiff can establish a defendant's notice of a dangerous condition by showing that the defendant knew about a similar prior incident in which "conditions substantially similar to the occurrence in question [caused] the prior accident." *Guevara v. NCL (Bahamas) Ltd*., 920 F.3d 710, 720 (11th Cir. 2019) (citing *Jones v. Otis Elevator Co*., 861 F.2d 655, 661–62 (11th Cir. 1988).

For a prior incident to be *substantially* similar, "'[t]he conditions surrounding the . . . incidents' need only be 'similar enough to allow . . . a reasonable inference concerning [Defendant's] ability to foresee this type of [accident] and its results.'"

*Taylor v. Royal Caribbean Cruises Ltd.*, 437 F. Supp. 3d 1255, 1259–60 (S.D. Fla. 2020) (quoting *Sorrels v. NCL (Bahamas) Ltd*., 796 F.3d 1275, 1280 (11th Cir. 2015)). Importantly, "[t]he 'substantial similarity' doctrine does not require identical circumstances, **and underlines for some play in the joints depending on the scenario presented and the desired use of the evidence**". *Sorrels*, 796 F.3d at 1287.

For example, in *Amy v. Carnival Corp*., 961 F.3d 1303 (11th Cir. 2020), a three-year-old child climbed on a cruise ship's guard rail and fell. The plaintiff attempted to prove the cruise line's notice of dangers associated with the guard rail by pointing to the cruise line's warnings to passengers "not to 'climb up rails,' [or] 'try to sit on them,'". *Id.* at 1309. The district court rejected this notice evidence based upon an erroneous finding that the warnings did not closely connect to the facts of the plaintiff's alleged incident. *Id.* In reversing the district court on this point, this Honorable Court explained that the district court applied "too exacting" of a standard for the notice inquiry. *Id.* at 1309 ("[S]uffice it to say that the district court's focus on specificity here was *too exacting* for this notice issue at summary judgment."). As further explained below, the District Court here also applied "too exacting" of a standard for the notice inquiry when it excluded Willis's proffered notice evidence.

The Eleventh Circuit's recent opinion in *Cogburn v. Carnival Corp.*, 2022 WL 1215196 (11th Cir. Apr. 25, 2022) is instructive here. In *Cogburn*, a plaintiff

slipped and fell on a cruise ship. To establish the cruise line's notice of the dangerous floor surface upon which she slipped, the plaintiff proffered a prior slip-and-fall incident on the same deck level on the cruise ship that had occurred four months earlier.

The district court erroneously held that the cruise line was not on notice of the floor surface the plaintiff alleged to be dangerous because there was no record evidence "demonstrating that the prior incidents [plaintiff proffered] occurred in the same location where [plaintiff] fell". *Id.* at *5.

This Court reversed and reasoned that the plaintiff *did* present a sufficiently similar prior incident which involved another cruise ship passenger who was injured four months earlier and who also slipped on the same deck aboard the cruise ship that the plaintiff slipped. *Id*. at *4-5. This Court reversed the district court on this point, even though there were different facts – as different as <u>*dry*</u> vs. <u>*wet*</u> – between the prior incident and the plaintiff's incident, as the Court noted:

> We note that Carnival's corporate representative testified at a deposition that [the prior incident] fall was not similar to [plaintiff]'s. The representative testified that the two incidents were different because **the floor was dry when [plaintiff] fell**, where [the prior incident guest] **slipped on a liquid**. It is true that Carnival's security officers prepared an incident report indicating **that the floor was dry when [plaintiff] fell**. But whether the floor was wet or dry when [plaintiff] slipped is a disputed issue of fact. **Because this case is at the summary judgment stage, we must view the evidence in the light most favorable to [plaintiff], the nonmovant, <u>and assume that the floor was wet</u>**. See *Smelter*, 904 F.3d at 1284.

- 18 -

*Cogburn v. Carnival Corp*., 2022 WL 1215196, at \*5 (11th Cir. Apr. 25, 2022).

Based on three prior injury-producing incidents, and before Willis's May 4, 2019 incident aboard the *Anthem of the Seas,* Royal Caribbean knew that the manner in which it conducted its muster drill – specifically the way its crewmembers rushed crowds of passengers through the drill – was dangerous and could result in injury to passengers. Royal Caribbean also knew that knew that the manner in which it conducted its muster drill – specifically the way its crewmembers did not give passengers reasonable accommodations in response to their expressed functional limitations – was dangerous and could result in injury to passengers. Willis proffered three separate and substantially similar prior incidents in support of Royal Caribbean's notice of these alleged dangerous conditions.

At the outset, it is important for the Court to note that at the time of Willis's May 4, 2019 incident, the Royal Caribbean Defendant in this action operated the subject vessel upon which Willis became injured, the *Anthem of the Seas*, and <u>also</u> operated the other vessels on which the prior similar muster drill incidents occurred. *See* ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 11, ln. 22 – pg. 14, ln. 20 (confirming that Royal Caribbean "operates" approximately 36 vessels within the Royal Caribbean fleet; "operate" includes being "responsible for" the vessels; "essentially they run the vessel"; "Royal Caribbean is the one that employs them and trains [the crewmembers]"; "Royal Caribbean would provide [crewmembers] the

guidance and the polices as to what the muster drill will entail and what employees during the muster drill are supposed to be doing").

The fact that the other incidents occurred on different Royal Caribbean ships during the muster drill does not make them dissimilar. As explained in *Kulakowski v. Royal Caribbean Cruises, Ltd.*:

> But, Defendant seeks to tie the purpose of the substantial similarity doctrine – whether there was proper notice – *to the vessel itself* **whereas the purpose may also be tied to particular conditions <u>on different vessels by the same operator</u>**. *See Ree*, 315 F.R.D. at 687 ("[T]he notice alleged must either be tied to the **<u>particular operator</u>**, the particular vessel, the particular waters, **<u>or at least the particular conditions</u>**."). Additionally, information about prior incidents on sister ships are relevant because there does not appear to be anything specific to the *Liberty of the Seas* that affects the theory of Defendant's breach. Because Plaintiff's discovery request is based on location and specific conditions, it is sufficiently similar and both factors of the substantial similarity doctrine are satisfied.

*Kulakowski,* 2016 WL 10951816, at *5 (S.D. Fla. 2016); *see also Ree v. Royal Caribbean*, 315 F.R.D. 682, 686 (S.D. Fla. 2016) (defining substantial similarity in the discovery context to prior incidents "reasonably related in terms of location and condition"). *See also Cogburn v. Carnival Corp.*, 2022 WL 1215196, at *5 (11th Cir. Apr. 25, 2022).

### a. <u>Prior incident 1</u>: James Bennetts – October 20, 2018 – *Independence of the Seas*

First, on October 20, 2018, a passenger named "James Bennetts" had a muster drill incident resulting in personal injury aboard Royal Caribbean's *Independence of the Seas. See* Mr. Bennetts' guest injury statement, ECF No. 46-5.

Within his guest injury statement, Mr. Bennetts reported that he "tripped on a step" while <u>trying to get to his muster drill location</u>. ECF No. 46-5. Mr. Bennetts was asked to identify what caused this incident, and he reported to Royal Caribbean that his incident occurred because he was "<u>concentrating on where the steward was telling us to go</u>". ECF No. 46-5. Further, Royal Caribbean asked Mr. Bennetts to identify what could have been done to avoid his incident, and he reported to Royal Caribbean that his incident could have been avoided if there was "<u>no rushing</u>". ECF No. 46-5. Mr. Bennetts completed his "Guest Injury Statement" for Royal Caribbean on October 23, 2018. *Id.*

With respect to excluding this prior incident from consideration, the District Court applied incorrect legal standards, made several clearly erroneous factual findings and abused its discretion.[3]

---

[3] The District Court excluded this evidence in connection with Royal Caribbean's motion *in limine*. *See* Order, ECF No. 53, pgs. 17-21. This Court reviews a district court's grant of a motion *in limine* for abuse of discretion. *MidAmerica C2L Inc. v. Siemens Energy Inc.,* 25 F.4th 1312, 1325–26 (11th Cir. 2022) (noting that under the abuse-of-discretion standard, the Court may reverse a decision of the district court if the district court applied an incorrect legal standard, followed improper procedures

First, the District Court argued that "Mr. Bennetts's injury statement does not indicate *who* was rushing him". Order, ECF No. 53, pg. 20. This was an erroneous finding because Mr. Bennetts's statement said that he was "<u>concentrating on where the *steward* was telling us to go</u>". ECF No. 46-5. With the benefit of reasonable inferences to which Willis was entitled as the non-movant at the summary judgment stage,[4] it was reasonable for the District Court to infer that the <u>*steward*</u> was the person who was rushing Mr. Bennetts. Indeed, this would be a *reasonable* inference because when asked what could have been done to avoid his incident, he stated "<u>no rushing</u>". ECF No. 46-5.

The District Court further erred when it stated "[a]lso absent from Mr. Bennetts's injury statement is any connection between being rushed and Mr. Bennetts's physical condition". Order, ECF No. 53, pg. 21. This was clearly an erroneous finding because Mr. Bennetts was asked what could have been done to avoid his incident, and he stated "<u>no rushing</u>". ECF No. 46-5. Clearly then, Mr.

---

in making its determination, or made findings of fact that are clearly erroneous). Here the District Court applied the incorrect legal standard, as the proper standard requires "some play in the joints", and made findings of fact that were clearly erroneous, as detailed herein.

[4] *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 722 (11th Cir. 2019) ("At the summary judgment stage, however, we must view all evidence and factual inferences in favor of [the non-movant]").

Bennetts stated that "rushing" caused him to trip on the step, causing his injury – just like Ms. Willis.[5]

Given these similarities, Mr. Bennetts's prior incident lines up closely with Willis's alleged dangerous condition and her deposition testimony (i.e. crewmember rushing during muster drill as a dangerous condition which caused him to fall on step, causing injuries); and is thus "substantially similar" to Willis's alleged incident. *See* Am. Complaint, ECF No. 19, ¶12.

In reality, both Mr. Bennetts October 20, 2018 incident and Willis's May 4, 2019 incident occurred in the same manner, a Royal Caribbean crewmember was rushing each passenger to go to a specific area during the muster drill, causing each passenger to fall over a step and become injured. These two incidents are substantially similar in circumstance (muster drills), cause (crewmembers rushing the passenger), and effect (fall over a step). *See* ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 58, ln. 12 – pg. 62, ln 9 (corporate representative testifying to these facts and authenticating this prior incident evidence).

The striking similarities between Mr. Bennetts's and Willis's incidents distinguishes this case from *Taiariol v. MSC Crociere S.A.*, 677 F. App'x 599 (11th

---

[5] Mr. Bennetts's statement lines up perfectly with Willis's incident. Willis was also asked at deposition what caused her incident, and she also testified that Artyushenko "rushing me" was the cause. ECF No. 43-1, Willis's Depo., pg. 79, ls. 1-19 (Q. Okay. And what do you believe caused you to fall? **A. Her rushing me**").

Cir. 2017). There, this Honorable Court held that "while [plaintiff] was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, *see Sorrels*, 796 F.3d at 1287 ('The 'substantial similarity' doctrine does not require identical circumstances....'), she at least had to produce evidence that <u>another person</u>, <u>while aboard *one of* the defendant's ships</u>, <u>slipped on the nosing of *one of the ship's steps*</u>." *Id.* at 601. Here, Willis has shown that Mr. Bennetts is that other person, who fell under the same cause circumstances, while aboard one of the defendant's ships.

Like the district courts in *Amy* and *Cogburn*, the District Court here employed "too exacting" of a standard in refusing to consider Mr. Bennetts's prior incident as substantially similar to Willis's incident. If Bennetts's accident and Willis's accident are not substantially similar – sharing the same articulated cause (being rushed by a crewmember), circumstance (Royal Caribbean's muster drill), and effect (fall on a step) – then no two incidents would ever be considered substantially similar. And, because there is "some play in the joints" pursuant to *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015), the District Court should have found Mr. Bennetts's incident substantially similar to Willis's to establish Royal Caribbean's notice of the alleged dangerous condition. *See also Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 722 (11th Cir. 2019) ("At the summary judgment stage, however, we must view all evidence and factual inferences in favor of [the non-movant]").

### b. <u>Prior incident 2</u>: Mary Daniels – March 6, 2017 – *Grandeur of the Seas*

Second, on March 6, 2017, a passenger named "Mary Daniels" had a muster drill incident which caused her to fall, resulting in her personal injury aboard Royal Caribbean's *Grandeur of the Seas. See* Ms. Daniels's guest injury statement, ECF No. 46-6; ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 63, lns, 11-16 (authenticating same).

Within her guest injury statement, Ms. Daniels reported that she asked an attendant if she could sit in a different location than she was being directed to during the muster drill, "due to the fact" that she was 92 years old and using a walker. ECF No. 46-6. In response the crewmember said "no", and ordered Ms. Daniels to her designated muster drill station without the Royal Caribbean crewmember giving her any accommodations.  At the end of the muster drill, Ms. Daniels tripped while trying to get her walker over the doorway. *Id.* Royal Caribbean asked Ms. Daniels to identify what could have been done to avoid her incident, and she told Royal Caribbean: "As with other cruise lines – Royal Caribbean should have a policy in place where older/handicapped individuals may gather and sit for the muster drill" *Id.* Ms. Daniels also added that "I would not be injured today if I could have mustered in another location" *Id.* In other words, if Ms. Daniels's reported and obvious physical limitations were accommodated by Royal Caribbean's crewmember during the muster drill, Ms. Daniels would not have fallen.

Like Ms. Daniels, Willis also informed the Royal Caribbean crewmember who was ushering her through the muster drill that her age and physical limitations prevented her from ambulating to the area she was directed by the crewmember to go during Royal Caribbean's muster drill.[6] Despite this undisputed fact, the District Court again applied "too exacting" of a standard when excluding this prior incident and did not allow for "play in the joints" provided by *Sorrels*, 796 F.3d 1275, 1287 (11th Cir. 2015).

Given these similarities, Ms. Daniels's prior incident lines up closely with Willis's alleged dangerous condition and her deposition testimony (i.e. crewmember not giving reasonable accommodations to a passenger who informed the crewmember of their limitations in ambulating where they are being directed during the muster drill, thereby causing injuries to the passenger); and is thus "substantially similar" to Willis's alleged incident. *See* Am. Complaint, ECF No. 19, ¶12.  Both Daniels and Willis fell and became injured during Royal Caribbean's muster drill after they were ordered by a Royal Caribbean crewmember to ambulate to areas they could not safely navigate, despite informing Royal Caribbean's crewmember of their

---

[6] ECF No. 43-1, Willis's Deposition, pg. 69, ln. 12 – pg. 70, ln. 13 ("I said, <u>I can't fit in there</u>. She said -- <u>I'm fat, you know. I can't</u>. So she said go in there. <u>I said I can't go in there</u>. <u>I can't climb</u>. <u>I'm old</u>. <u>I'm fat</u>. So she says, oh, come on, follow me. So I held on again, and I stepped down <u>and I went down</u>. . . . <u>She was rushing me</u>).

functional limitations.[7] These two incidents also share circumstance (muster drill), cause (failure to provide requested accommodation to passenger with disclosed limitations), and effect (fall causing injury); and are thus substantially similar. *See* ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 62, ln. 14 – pg. 67, ln 16 (Royal Caribbean's corporate representative testifying to these facts and authenticating this prior incident evidence).

### c. <u>Prior incident 3</u>: Barnes Boyle – July 30, 2018 – *Enchantment of the Seas*

Third, on July 30, 2018, a passenger named "Barnes Boyle" suffered a fall during the muster drill, resulting in personal injury aboard Royal Caribbean's *Enchantment of the Seas. See* Mr. Boyle's guest injury statement, ECF No. 46-7; ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 68, lns 6-11 (authenticating).

Within his guest injury statement, Mr. Boyle reported that he "fell into a lady in a scooter" while leaving Royal Caribbean's muster drill; and when asked to identify what caused his incident, Mr. Boyle reported that there were "too many

---

[7] *See e.g.* ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 19, ln. 10 – pg. 20, ln. 17 ("Really, I mean, if anybody needs help Royal Caribbean will assist them with it, yes … . If there's somebody who needs assistance getting there, Royal Caribbean -- and says to a crew member, I need some help, then a crew member will assist them"; "It's not a written policy. But if a guest is going to walk up to a crew member and say, I need help, a crew member is not going to turn them away and say no. **They're going to assist them, of course**").

people trying to move at the same time." *Id.* Mr. Boyle was also asked what could have been done to avoid his accident, and he reported "gone to a different muster station." *Id.* In other words, the crowded and confined conditions at the muster drill area where Mr. Boyle was directed caused him to fall and become injured. Mr. Boyle provided Royal Caribbean with his "Guest Injury Statement" on July 30, 2018. *Id.*

Similarly, in this case, Willis testified that her incident was caused, in part, by being directed into crowded and confined conditions during the muster drill:

> ". . . this Valeri[y]a [Artyushenko] her name is comes up to me and says, You're late. Hurry up. Get a seat. So I felt, you know, she was attacking me. So I said all right. And I went to the edge of the steps, and I looked around. I said, where are the seats? **There were tons of people there**."

ECF No. 43-1, Willis's Depo., pg. 69, ln. 12- pg. 70, ln. 13. Willis was then directed by the crewmember to try to maneuver into multiple spaces that were either too small for Willis to fit or too inaccessible for Willis to climb into. *Id.* Finally, Willis was made to rush to follow the crewmember through the crowd, causing her to trip over a step and fall. *Id.* Again, both incidents share circumstance (muster drill), cause (crowding in a confined space), and effect (fall causing injury). Despite the substantial similarities of the two incidents, the District Court again applied "too exacting" of a standard when excluding this prior incident and did not allow for "play in the joints" provided by *Sorrels*, 796 F.3d 1275, 1287 (11th Cir. 2015).

- 28 -

In the end, the District Court did not faithfully follow this Honorable Court's instructions in *Sorrells, Amy* or *Cogbrun*. All three prior incidents outlined above occurred during muster drills on Royal Caribbean vessels; all caused passengers to fall as a result of a condition alleged as a causing factor in Willis's incident; and all occurred within 3 years before Willis's incident.

For a prior incident to be substantially similar, "'[t]he conditions surrounding the . . . incidents' need only be 'similar enough to allow . . . a reasonable inference concerning [Defendant's] ability to foresee this type of [accident] and its results.'" *Taylor v. Royal Caribbean Cruises Ltd.*, 437 F. Supp. 3d 1255, 1259–60 (S.D. Fla. 2020) (quoting *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1280 (11th Cir. 2015)). "The 'substantial similarity' doctrine does not require identical circumstances, **and allows for some play in the joints** depending on the scenario presented and the desired use of the evidence". *Sorrels*, 796 F.3d at 1287 (emphasis added). In short, all three incidents provided notice to Royal Caribbean of the three conditions which existed during the subject muster drill which Willis alleges to have caused her fall and injuries.

Similar to this Honorable Court's analysis in *Cogburn v. Carnival Corp.*, 2022 WL 1215196 (11th Cir. Apr. 25, 2022), the District Court below should have considered all three prior incidents as substantially similar, providing Willis, as the non-movant, the benefit of reasonable inferences of notice to Royal Caribbean of the

offending conditions. As such, the District Court should have denied Royal Caribbean's Motion for Summary Judgment.

**II.    The District Court erred in holding that Royal Caribbean satisfied its initial summary judgment burden on the issue of medical causation before shifting the summary judgment burden to Willis.**

In *Clark v. Coats & Clark, Inc.*, this Honorable Court succinctly explained the summary judgment burden-shifting scheme:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Only when that burden has been met* does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

929 F.2d 604, 608 (11th Cir. 1991) (emphasis added).

In the context of this procedure, this Honorable Court explained that in order for the moving party to meet its initial burden, the moving party must "**negate**" an element of the plaintiff's claim. *See id.* at 606-07 (explaining in detail the Supreme Court's precedent in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and noting that in that case, the moving party "failed to negate an element of [the plaintiff]'s claim"). *See also Anderson v. Radisson Hotel Corp.*, 834 F. Supp. 1364 (S.D. Fla. 1993) ("When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to

specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial") (emphasis in original).

In this case, Royal Caribbean did not proffer *any* evidence before the District Court to "negate" Willis's medical causation element. To be sure, Royal Caribbean did not proffer *any* of the following evidence: i) a medical report from its *own* medical expert opining that the subject incident did not cause Willis's alleged neck herniations; ii) deposition testimony from its *own* medical expert on this point; iii) deposition testimony from *any* of Willis's disclosed medical providers agreeing that the subject incident did not cause Willis's alleged neck herniations.[8]

---

[8] The only medical evidence Royal Caribbean advanced before the District Court was Willis's post-incident shipboard medical record. ECF No. 51-1. Royal Caribbean argued that the report did not specifically mention neck pain. ECF No. 51, ¶3. However, Royal Caribbean advanced that evidence in support of its *reply* – which was improper – and the District Court was not permitted to consider that evidence. *Castro v. United States*, 2021 WL 2269811, at *7 (S.D. Fla. May 3, 2021), *report and recommendation adopted,* 2021 WL 2176870 (S.D. Fla. May 28, 2021) ("A reply memorandum may not raise new arguments <u>or evidence</u>, particularly where the evidence was available when the underlying petition was filed, and Movant was aware (or should have been aware) of the necessity of the evidence") (citing S.D. Fla. L.R. 7.1(c)(1)).

Notwithstanding, Royal Caribbean's reliance on that improper evidence only invited an issue of fact on the medical causation point because the record states that Willis: i) "fell during drill"; ii) "[n]ow with body aches"; and iii) had a "contusion of back wall of thorax". The thorax is the part of the body between the abdomen and neck. Thus, the subject fall, as documented by the shipboard medical records, impacted Willis's neck like a whiplash injury.

Without any of this evidence, Royal Caribbean did not meet *its* initial summary judgment burden to *negate* Willis's medical causation element; and therefore, the summary judgment burden never shifted to Willis. *See Clark*, 929 F.2d at 607 ("the party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case"; "the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence <u>unless and until</u> the movant has properly carried its burden") (quoting *Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982)).

Here, the District Court did not sufficiently explain in its Order whether Royal Caribbean ever satisfied its initial burden on the issue of medical causation; and if it did, how. This Court in *Clark* was critical of district courts that similarly failed to apply the proper summary judgment standard faithfully and rigorously:

> This court is in a difficult position because of the way this case has been approached by both Coats & Clark, as the moving party**, and the district court**. The district court never discussed whether Coats & Clark met its burden as the moving party on summary judgment. The opinion discusses only what burden the plaintiffs had and why they did not meet it. **We can surmise that the court believed *Celotex* changed the general rule so that under current summary judgment law whoever has the burden at trial (the plaintiffs here) has the burden on summary judgment. <u>As we have pointed out, that is *not* the law</u>**.

*Clark v. Coats & Clark, Inc*., 929 F.2d at 608 (bold emphasis added; italics in original).

- 32 -

Here, the District Court misapplied the summary judgment standard by failing
to consider Willis's proffered evidence in support of medical causation for her neck
herniations. For example, the District Court held that:

> 'when the non-moving party bears the burden of proof on an issue at
> trial' as Plaintiff does in this case on her general negligence and
> negligent failure to warn claims, 'the moving party need not 'support
> its motion with affidavits or other similar material negating the
> opponent's claim' in order to discharge its initial responsibility'.
> 'Instead, the moving party simply may 'show[ ]'—that is, point[ ] out
> to the district court—that there is an absence of evidence to support the
> nonmoving party's case.

Order, ECF No. 53, pg. 16 (*citing Rice-Lamar v. City of Ft. Lauderdale, Fla*., 232

F.3d 836, 840 (11th Cir. 2000)).[9]

Despite outlining this law in its Order, the District Court did not give due
credit to the medical record/letter and anticipated trial testimony of Dr. Kozel,
Willis's treating doctor who had treated and examined her *before* and *after* the
subject incident and who, as Willis's treating doctor, issued a medical record/letter
supporting that Willis's injuries were caused by the subject incident. Indeed, the
District Court acknowledged that Dr. Kozel – as Willis's treating doctor – did not

---

[9] Per *Clark*, the District Court did not require Royal Caribbean to first negate medical
causation; and per *Rice*, the District Court did not give due credit to the medical
report issued by Willis's treating doctor, Dr. Kozel. Dr. Kozel's trial testimony,
consistent with the facts provided in his record/letter, would have carried Willis's
burden of proof on the medical causation element.

need to issue a formal Rule 26(a)(2)(B) expert report to testify on the issue of medical causation:

> Plaintiff is correct that, as her treating physician, Dr. Kozel need not prepare a Rule 26(a)(2)(B) expert report to testify on the issue of causation because he is a non-retained expert disclosed under Rule 26(a)(2)(C).
>
> * * *
>
> While Plaintiff is correct that Dr. Kozel need not disclose an expert report on the issue of causation because he is her treating physician, the only medical expert evidence in the record to which Plaintiff points the Court is Dr. Kozel's one-paragraph letter, which reads in full as follows:
>
>> The above named person has been a patient in this medical practice since 2012. She has been seen on a regular basis because of a number of comorbid medical illnesses. During that period of time there had been no complaint of neck pain until her visit on June 19, 2019. During that visit she did describe a fall that occurred while being on a cruise and related having been seen by an orthopedic surgeon who had requested an MRI of the cervical spine because of pain which she had been suffering from since her fall. The MRI did indeed show multi-level disc disease of the cervical spine. There had never been any prior radiologic study of the spine to my knowledge to which any comparison could be made. I hope this information has been helpful.

ECF No. 53, pgs. 26-27.

However, the "absence of evidence" to support the non-moving party's case means **no** evidence. Here, Dr. Kozel provides evidence from which a jury can reasonably conclude that Willis's cervical spine injuries were caused by Willis's described "fall that occurred while being on a cruise and . . . pain which she had been suffering from since her fall;" and Willis's "MRI of the cervical spine . . . [which]

did indeed show multi-level disc disease of the cervical spine." The District Court did not give due credit to the medical report and anticipated trial testimony of Dr. Kozel.

First, per *Rice*, Royal Caribbean did not meet its initial summary judgment burden by "pointing out" the absence of evidence on the medical causation point. In fact, the existence of Dr. Kozel's report and his anticipated trial testimony was record evidence that Willis proffered before the District Court; and this was competent and admissible medical evidence that Willis could have used at trial to carry her burden of proof on the medical causation element.

In *Huddleston v. United States*, 2019 WL 6879741 (S.D. Fla. 2019), a district court explained a similar situation in which a plaintiff did not have a retained medical expert, but properly disclosed their treating doctor as a medical expert, and why summary judgment in the defendant's favor in that situation ***was not*** warranted:

> A treating physician testifying as a lay witness may testify about the cause of an injury if knowledge of causation was necessary for the physician to treat the patient or make decisions about treatment. *Wilson v. Taser Int'l*, 303 F. App'x 708, 712-13 (11th Cir. 2008) . . . **If, at the summary-judgment stage, it is unknown whether the plaintiff has treating physician lay witnesses to provide causation testimony, summary judgment should be denied**. *Jones*, 2013 WL 8695361, *6. The exact boundaries of the treating physician's testimony are then addressed at trial with specific objections to specific testimony. Id.
>
> * * *
>
> **Therefore, Defendant has not shown that Plaintiff has no admissible medical testimony to establish medical causation. Plaintiff's ability to establish medical causation remains a genuine**

- 35 -

**issue for trial and, thus, Defendant's motion for summary judgment is denied**.

*Huddleston v. United States*, 2019 WL 6879741, at *1–2 (S.D. Fla. 2019).

Second, Dr. Kozel, is Willis's properly disclosed treating doctor. As such, Dr. Kozel was not required to prepare a robust medical report that courts typically expect from retained medical experts that are not treating medical doctors. Instead, Dr. Kozel's medical opinions and anticipated trial testimony – as a treating doctor – are discerned from his medical records, and his education, professional experience and credentials, as well as his application of his education and experience to his treatment of Willis.

In this case, that treatment was for 7 years before to the subject incident, where he recorded that Willis never before complained of cervical pain; and after the subject incident, where Willis complained of cervical pain following the subject fall on Royal Caribbean's ship, which precipitated Willis's consulting an orthopedic surgeon and having her first ever cervical MRI, which, Dr. Kozel reports, was positive for cervical injury.

Dr. Kozel's medical documentation is evidence supportive of the medical causation of Willis's injuries. And Dr. Kozel was permitted to proffer his opinions on the medical causation issue *without* disclosing any expert report at all because they were based on his examination and treatment of Willis. *Jones v. Royal Caribbean Cruises, Ltd.,* 2013 WL 8695361, at *5 (S.D. Fla. 2013) ("Treating

physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis, and the extent of disability, if any, caused by the condition or injury"; "Additionally, because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient.").

Third, with respect to Dr. Kozel's opinions outlined in the report, Willis is entitled to reasonable inferences and all ambiguities resolved in her favor at the summary judgment stage. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (explaining that in determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party). So here, when Dr. Kozel stated in his report that i) he had treated Willis since 2012 (i.e. 7 years before the 2019 incident); ii) she had not complaints of neck pain before her June 19, 2019 visit; iii) the June 19, 2019 visit was after Willis' reported fall on a cruise ship; and iv) Dr. Kozel's medical analysis of a post-incident cervical MRI showed multi-level disc disease of her cervical (neck) spine, Willis was entitled to the reasonable inference at the summary judgment stage that

Dr. Kozel would testify at trial that the subject cruise ship incident caused Willis's orthopedic neck injuries.[10]

Fourth, per Supreme Court precedent, Willis was not required to depose Dr. Kozel to further clarify his report in order to survive Royal Caribbean's summary judgment challenge:

> **We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. <u>Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses</u>.**

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In the end, the District Court here made the same error in Willis's case as the lower court did in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). In Willis's case, the District Court did not hold Royal Caribbean to its initial summary judgment burden to actually *negate* the medical causation element; and even further, did not give due credit to Dr. Kozel's report which was affirmative evidence and anticipated testimony Willis would have used a trial to support her burden on the medical causation element. *See e.g. Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (explaining that in *Adickes*, the moving party had not "carried its burden because of its failure . . . to negate an element of the [non-movant's] claim").

---

[10] In arguing that Dr. Kozel's report merely explains a "correlation" to the cruise ship fall instead of medical causation, Order, ECF No. 53, pg. 27, the District Court improperly weighed evidence at the summary judgment stage, and did not give Willis the benefit of reasonable inferences.

To conclude on this issue, Willis's criticism of the District Court's analysis is similar to the district court's criticism of the summary judgment movant in *Anderson v. Radisson Hotel Corp.*:

> Defendant is mistaken, and blurs the distinction between the burden of proof at trial and the burdens of production at summary judgment. *See Clark,* 929 F.2d at 606–608. Although *Celotex* stands for the proposition that under certain circumstances a summary judgment movant may carry its burden without presenting evidence negating an element of the other party's claim, merely asserting that the non-moving party has not come forward with evidence to support its claim is *not* enough. *See Celotex,* 477 U.S. at 328, 106 S.Ct. at 2555 (White, J., concurring). To repeat: the movant must first *demonstrate* that the non-moving party *cannot* carry its burden of proof *at trial. Clark* 929 F.2d at 607–608.

> This distinction between not placing proof in the record and not being able to offer proof at trial is crucial. As Justice White emphasized in *Celotex:* A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his own witnesses or obtain their affidavits to defeat a motion for summary judgment asserting only that he has failed to produce any support for his case.

*Anderson*, 834 F.Supp. 1364, 1368-69 (S.D. Ga. 1993).

### a. In the alternative, before the District Court was the "unusual situation" outlined by the Supreme Court in *Celotex*; in that context, Willis survived Royal Caribbean's summary judgment challenge because Willis could carry her burden of proof at trial on the medical causation element with Dr. Kozel's anticipated trial testimony, Dr. Kozel's report, and Willis's post-incident MRI findings.

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court explained the summary judgment burden shifting scheme in the "unusual situation" where

neither party could prove either the affirmative or the negative of an essential element of a claim at the summary judgment stage. *See e.g. Clark*, 929 F.2d 604, 607-08 (explaining *Celotex* and this "unusual situation"); *Mann v. Carnival Corp.*, 385 F.3d 1278, 1283 (S.D. Fla. 2019) (same). In such a situation, the moving party may satisfy its initial summary judgment burden by showing that the non-movant would not be able to meet its burden of proof **at trial**. *Celotex*, 477 U.S. at 322-23; *Clark*, 929 F.2d at 607-08; *Mann*, 385 F.3d at 1283.

As explained above, Royal Caribbean did not present any evidence *negating* the medical causation element of Willis's claim.[11] Willis maintains that i) the post-incident cervical MRI showing disc disease, ii) Dr. Kozel's report, and iii) Dr. Kozel's anticipated trial testimony, carry sufficient evidentiary value to prove the affirmative on her medical causation element at summary judgment and/or trial. But, even if the Court did not find that evidence sufficient at the summary judgment stage to prove the affirmative on the medical causation point, then this case falls within the "unusual situation" presented in *Celotex, Clark* and *Mann*.

In such a situation, the moving party, here Royal Caribbean, could satisfy its initial summary judgment burden by showing that the non-movant, Willis, would

---

[11] Royal Caribbean did not proffer *any* of the following evidence: i) a medical report from its *own* medical expert opining that the subject incident did not cause Willis's alleged neck herniations; ii) deposition testimony from its *own* medical expert on this point; iii) deposition testimony from *any* of Willis's disclosed medical providers agreeing that the subject incident did not cause Willis's alleged neck herniations.

not be able to meet its burden of proof **at trial**. But, with Dr. Kozel properly disclosed as a medical expert and treating physician, his anticipated trial testimony, based on his medical records/letter, Willis proffered sufficient record support at the summary judgment stage that she could carry her burden of proof at trial on the medical causation element. *See Jones v. Royal Caribbean Cruises, Ltd.,* 2013 WL 8695361, at *5 (S.D. Fla. 2013) ("Additionally, because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions <u>as to the cause of injuries</u> do not require a written report if based on the examination and treatment of the patient."); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (explaining that in determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party).

Willis's proffered and anticipated evidence on medical causation goes well beyond the District Court's cited case in *Rivera v. Royal Caribbean Cruises Ltd*, 711 F. App'x 952, 954-55 (11th Cir.2017). In *Rivera*, the district court originally struck **all** of the plaintiff's expert witnesses. *Id.* at 953. Naturally, without any expert witnesses at trial, the plaintiff in *Rivera* was unable to meet their summary judgment burden or burden of proof at trial, as this Court noted. *Id.* at 955 ("Without medical expert testimony, it is not possible to distinguish between ailments Rivera experienced before the fall and those she experienced after –and due to—the fall").

However here, Willis's treating physician, Dr. Kozel, is able to distinguish between those ailments Willis experience before the fall and those she experienced after – and due to – the fall.  Dr. Kozel's medical record/letter specifies that, in fact, she had no cervical problems *before* the fall, but experienced significant cervical problems <u>*after*</u> the fall. Dr. Kozel's testimony would have carried Willis's burden of proof on the medical causation element at trial; and certainly precludes summary judgment on the medical causation issue - especially in light of the absence of any evidence to the contrary proffered by Royal Caribbean. *See e.g. Huddleston v. United States*, 2019 WL 6879741, at *1–2 (S.D. Fla. 2019) ("If, at the summary-judgment stage, it is unknown whether the plaintiff has treating physician lay witnesses to provide causation testimony, summary judgment should be denied."). As such, the District Court should have denied Royal Caribbean's Motion for Summary Judgment.

## III.    The District Court erred in holding that Willis did not present sufficient evidence on the issue of general injury causation and damages.

Putting aside the issue of medical causation for "not readily observable" injuries, Willis should have survived summary judgment and was entitled to a jury trial, at the very least, on her general damages following her fall aboard Royal Caribbean's *Anthem of the Seas*.

In support thereof, Willis presented to the District Court her sworn deposition testimony in which, when asked what injuries she was claiming in the case, Willis testified:

> Q. Okay. Can you tell me what injuries you're claiming to have suffered in the accident on the ANTHEM OF THE SEAS in May of 2019?
> **A. What injuries? <u>Well, I hurt my neck</u>. I'm told I have herniated discs, and I have something leaning on a nerve. I hurt my neck, the discs in my neck.**
>
> Q. Okay. Aside from your neck, were there any other body parts that you injured in the accident on the ANTHEM OF THE SEAS?
> **A. <u>Well, I ached all the way up on the right side mainly, all the way from the buttocks all the way up to my head because it felt like everything went up to my -- pushed up to my head</u>. That has subsided, <u>but except now it's going from my neck -- my head down to my shoulder down my arm to my hand</u>. My right side, it's very hard to pick up my arms even, and now it's going to the left side.**
>
> Q. Okay. So you're saying that you have pain from your head down to your shoulders, radiating into your arms?
> **A. Right. And even down the top of my back.**
>
> Q. Okay. And you said the right arm is worse than the left arm?
> **A. Correct.**
>
> Q. And are you having some weakness in your right arm?
> **A. Yes. <u>I can't pick things up. I can't -- I drop things with my hands. I just hurt so bad with it</u>.**

ECF No. 43-1, Willis's Depo., pg. 41, ln. 15 – pg. 42, ln. 21. Also in support of Willis's general damages and causal link to the subject cruise fall is Dr. Kozel's report which noted that after years of treating Willis, her first report of neck pain to Dr. Kozel followed the cruise ship fall which precipitated Willis to consult an

- 43 -

orthopedic surgeon and obtain an MRI, which Dr. Kozel confirmed as having positive findings for cervical injury. *See* Dr. Kozel Report, ECF No. 46-8.

Indeed, "it is well-established under Florida law that in tort actions alleging a physical injury, such as the present case, lay testimony from a personal injury claimant is sufficient to show mental anguish, loss of enjoyment for life, or other non-economic damages." *Button v. Royal Caribbean Cruises, Ltd.*, 2013 WL 12064491, at *2 (S.D. Fla. 2013) (*quoting Angrand v. Key*, 657 So. 2d 1146, 1149 (Fla. 1995) (explaining that "it has long been the rule is this state [that] the relevant testimony" on such damages does not usually come from experts)). So, with respect to injuries and damages Willis testified as caused by and resulting from the subject incident, her testimony alone was sufficient to support her causation and damage elements at the summary judgment stage, and trial. *See e.g. Braddock v. Seaboard A. L. R. Co.*, 80 So. 2d 662, 668 (Fla. 1955) ("Jurors know the nature of pain, embarrassment and inconvenience, and they also know the nature of money"); *Mills v. Redwing Carriers, Inc.*, 127 So. 2d 453, 456 (Fla. 2d DCA 1961) ("When facts are within the ordinary experience of the jury, the conclusion from those facts will be left to them, and even experts will not be permitted to give conclusions in such cases.")

The general damage and causal link evidence Willis presented before the District Court went above and beyond what was considered legally sufficient in

*Mann*, 385 F.Supp.3d 1278, 1287 (S.D. Fla. 2019) ("Mann has only put forward evidence of the injuries Dr. Jackson noted in his report. . . which he could testify to at trial as a lay witness, and those Mann can testify to herself. Thus, Mann has some evidence of some of her claimed damages, and Carnival is not entitled to summary judgment on this third and separate basis").

So, even if Willis did not meet her burden on the medical causation issue for "not readily observable" injuries – which, for the reasons set forth herein, she did – Willis certainly should have survived summary judgment and was entitled to a jury trial, at the very least, on her general damages which she testified were caused by her fall aboard Royal Caribbean's *Anthem of the Seas.* Accordingly, the District Court should have denied Royal Caribbean's Motion for Summary Judgment.

**IV.** **The District Court erred in holding that Willis did not present sufficient evidence in support of her vicarious liability claim to survive summary judgment.**

On September 15, 2021, Willis amended her complaint to include a count against Royal Caribbean for vicarious liability based upon the conduct of Royal Caribbean's crewmember, Valeriya Artyushenko. Am. Complaint, ECF No. 19 at ¶11 (identifying "Valeria") and Count III (vicarious liability).

During the lower court proceedings, Willis marshaled evidence and presented to the District Court sufficient record facts to support vicarious liability findings that: a) Royal Caribbean controlled Artyushenko, as she was a crewmember aboard the

*Anthem of the Seas*; b) Artyushenko acted unreasonably under the circumstances and caused Willis's injuries; and c) Royal Caribbean is vicariously liable for Artyushenko's conduct in causing Willis's injuries. With such findings, Willis did not need to prove Royal Caribbean's notice of the dangerous conditions she alleged to have caused her injuries. *Yusko v. NCL (Bahamas) Ltd.*, 4 F.4th 1164 (11th Cir. 2021).

### a. Royal Caribbean controlled Artyushenko, as she was a crewmember aboard the *Anthem of the Seas*.

Record support for this fact comes from Royal Caribbean's corporate representative. ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 52, lns. 11-16 (confirming Artyushenko was Royal Caribbean's crewmember). *See also* ECF No. 46-1 Royal Caribbean's Corp. Rep. Depo., pg. 11, ln. 22 – pg. 14, ln. 20 ("Royal Caribbean is the one that employs them and trains [the crewmembers]"; "Royal Caribbean would provide [crewmembers] the guidance and the polices as to what the muster drill will entail and what employees during the muster drill are supposed to be doing"). In fact, Royal Caribbean's corporate representative testified:

> Q. And what is Valeriya's job duty as it pertains to being stationed in the A2 section of the Royal Theater?
> A. Just to assist and make sure everybody gets in and be there.
> Q. Royal Caribbean expected that she assisted [passengers] safely, is that correct?
> A. That she assists passengers if they need assistance.
> **Q. And Royal Caribbean expects that she assists them in a safe manner?**
> **A. Yes.**

ECF No. 46-1, Royal Caribbean's Corp. Rep. Depo., pg. 54, lns. 5-16.

### b. Artyushenko acted unreasonably under the circumstances and caused Willis's injuries.

A combination of Willis's testimony, Royal Caribbean's corporate representative's testimony and Willis's cruise ship safety expert's testimony proves this point.

First, Willis testified that she expressly told Artyushenko of her functional limitations, ECF No. 43-1, Willis's Depo., pg. 69, ln. 12 – pg. 70, ln. 13 ("I said, I can't fit in there… So she said go in there. I said I can't go in there. I can't climb. I'm old. I'm fat… I went down. She was rushing me"). Yet, despite Willis's functional limitations articulated directly to Artyushenko, the crewmember "rush[ed]" and "pressure[d]" Willis to follow her down a step, with a non-continuous handrail during Royal Caribbean's muster drill, which directly caused her to fall. *Id.* at pg. 79, lns. 12-16.

Second, Royal Caribbean's corporate representative testified that Royal Caribbean expects its crewmembers to conduct the muster drill in a way that "won't cause [passengers] injury". ECF No. 46-1, Corp. Rep. Depo., pg. 14, ln. 25 – pg. 15, ln. 20; and if a passenger requires assistance in connection with Royal Caribbean's muster drill, it was Royal Caribbean's policy that "Royal Caribbean will assist them", ECF No. 46-1, Corp. Rep. Depo., pg. 19, ln. 10 – pg. 23, ln. 17

Third, Randall Jaques, Willis's cruise ship safety expert and a former Chief Safety Officer and Chief Security Officer for several major cruise lines, testified that "Royal Caribbean should have considered Willis's limitations and provided her accommodations with respect to its muster drill." ECF No. 43-2, Jaques's Depo., pg. 79, lns. 10-18; pg. 30, ln. 1 – pg. 31, ln. 10.

For example, on the rushing point, Jaques testified that "You don't inherently place somebody in jeopardy by telling them where to go, in an unsafe manner to proceed **when they've already told you … she says she doesn't walk well**. So what are you sending her downstairs for? It doesn't make sense". ECF No. 43-2, Jaques's Depo., pg. 83, lns. 14-20.

On the reasonable accommodations point, Jaques testified that Artyushenko "should have considered Willis's limitations and provided her accommodations with respect to its muster drill.". ECF No. 43-2, Jaques's Depo., pg. 82, lns. 2-7; pg. 79, lns 10-18. In summary on these two points, Jaques testified:

> And it was my understanding that Mrs. Willis spontaneously saying, Hey, I'm this or I'm that, or I can't do this, **is a understandable, red flag of a crew member that's trained to be in a muster drill position, that everything stops right there**. **There's no more movement. There's no more going downstairs. There's no more going anywhere. That I come to you now, or I get somebody else to come to you that's a team member, and we provide you assistance, but you don't go down into the theatre**. And I don't -- even if I was to take you into the theatre, what we would do and what I would do, **is that we would help you to the nearest chair to the upper top row as you enter the theatre to sit you down, and we would physically help you sit down**.

ECF No. 43-2, Jaques's Depo., pg. 30, ln. 1 – pg. 31, ln. 10. *See also* ECF No. 41-1, Jaques's Expert report in support of the dangerous conditions Willis alleged in the Amended Complaint; ECF No. 43-2, Jaques' Depo., pg. 72, lns. 4-15 (R. Jaques authenticating his expert report and confirming that all of his opinions therein are made within a reasonable degree of professional certainty).

In fact, the circumstances of Willis's incident and Royal Caribbean's liability for same is similar to the cruise line's potential liability explained in *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164 (11th Cir. 2021). There, this Honorable Court held a plaintiff could present a vicarious liability claim against a cruise line based upon a cruise line's employee's conduct in dancing with a passenger in a dangerous manner. *Id.* at *1166 ("She alleged that her partner in the competition—a professional dancer and cruise ship employee—released her hands as she leaned away from him during a dance move, causing her to fall backward and hit her head on the deck."). The carelessness Willis alleged with respect to Artyushenko's conduct during Royal Caribbean's muster drill is similar to the carelessness the *Yusko* plaintiff alleged with respect to the crewmember dancer who caused that plaintiff's injuries.

### c. Royal Caribbean is vicariously liable for Artyushenko's conduct in causing Willis's injuries.

In view of the above outlined deposition testimony, Willis's ability to identify Artyushenko, Artyushenko's undisputed status as a Royal Caribbean crewmember,

and record evidence supporting Artyushenko's negligent conduct performed within the course and scope of her muster drill duties for Royal Caribbean, Willis sufficiently alleged and supported with record evidence a vicarious liability claim against Royal Caribbean and in accordance with *Yusko v. NCL (Bahamas) Ltd.*, 4 F.4th 1164 (11th Cir. 2021). In *Yusko* this Honorable Court held:

> Our precedent assumes—and today we expressly hold—that when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, **the passenger need not establish that the shipowner had actual or constructive notice of a risk-creating condition**. Accordingly, we reverse and remand.

*Yusko v. NCL (Bahamas), Ltd*., 4 F.4th 1164, 1166 (11th Cir. 2021) (emphasis added).

Because Willis supported her vicarious liability claim with record evidence, Willis did not need to present notice evidence in support of Count III to survive summary judgment. At the very least, Willis should have been permitted to go to the jury on her vicarious liability claim; and the District Court should have denied Royal Caribbean's Motion for Summary Judgment.

## **CONCLUSION**

This Honorable Court should reverse the District Court's Order and remand this case for the following reasons:

First, the District Court erred in excluding evidence of three prior substantially similar incidents Willis proffered to support Royal Caribbean's notice of the dangerous conditions she alleged to have caused her injuries. The three prior incidents involved Royal Caribbean's guests who sustained injuries participating in Royal Caribbean's mandatory muster drill, and all within the three-year period before Willis' alleged incident. All three prior incidents were substantially similar to Willis's alleged incident and were therefore legally sufficient to support Royal Caribbean's notice.

For example, it was documented in a post-injury statement that one passenger was injured tripping on a step while "concentrating on where the steward was telling us to go" and when asked to identify what could have been done to avoid his incident he reported "no rushing". Similarly, Willis was injured tripping on a step when Royal Caribbean's crewmember rushed her to follow the crewmember during Royal Caribbean's mandatory muster drill.

Second, the District Court erred in holding that Royal Caribbean satisfied its initial summary judgment burden on the issue of medical causation before shifting the summary judgment burden to Willis. In the District Court proceedings, Royal

Caribbean did not present *any* evidence to negate Willis' medical causation element, such that the summary judgement burden never shifted to Willis. And, even if Willis did have a burden at the summary judgment stage, which she disputes, she satisfied that burden by proffering the medical report and anticipated trial testimony of Dr. Kozel – Willis's treating doctor of 7 years before the incident and after, and a properly disclosed medical expert. Dr. Kozel's expert testimony at trial would be sufficient to satisfy Willis's burden of proof on the medical causation element.

Third, the District Court erred in holding that Willis did not present sufficient evidence on the issue of general injury causation and damages. In other words, even if Willis did not present sufficient medical causation evidence for her neck herniation injuries, which she disputes, her sworn testimony that she fell and suffered neck pain following the Royal Caribbean muster incident would be sufficient alone to support general causation and damage elements of her claims at trial.

Lastly, the District Court erred in holding that Willis did not present sufficient evidence in support of her vicarious liability claim to survive summary judgment. In fact, Willis proffered strong record evidence and deposition testimony from several witnesses in support of her vicarious liability claim against Royal Caribbean premised on the conduct of Artyushenko. Given the viability of that vicarious liability claim, Willis did not need to present any evidence on the issue of Royal Caribbean's notice. So, even if the District Court properly excluded Willis' prior

incident evidence, which she disputes, Willis's vicarious liability claim would have survived summary judgment.

In the end, this Honorable Court should reverse the District Court's Order and remand this case for a jury trial.

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that the size and style of type used in this Initial Brief is Times New Roman in 14-Point Type and further that this brief meets the length requirements contained in F.R.A.P. 32(a)(7)(B). Specifically, this brief contains 12,905 words.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 16, 2022, a true and correct copy of the foregoing was filed electronically and served either via transmission of Notices of Electronic Filing generated by CM/ECF or email to **Andrew Craven, Esq.** (acraven@chartwelllaw.com), CHARTWELL LAW, 100 SE 2nd St., Suite 2150, Miami, Florida 33131, *Attorneys for Appellee, Royal Caribbean.*

Respectfully submitted,

LIPCON, MARGULIES
& WINKLEMAN, P.A.
*Attorneys for Plaintiff / Appellant*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ L. Alex Perez*
     **L. ALEX PEREZ**
     Florida Bar No. 125452
     aperez@lipcon.com